J-S56019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALEEF MUMIN | : | |
| | : | |
| Appellant | : | No. 3130 EDA 2019 |

Appeal from the PCRA Order Entered September 24, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0012875-2009.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED:  MARCH 26, 2021**

Khaleef Mumin appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act.  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On February 11, 2011, a jury found [Mumin] guilty of attempted murder, aggravated assault, criminal conspiracy, and related offenses.  The evidence adduced at trial showed that [Mumin] and his co-defendant Tyrik Perez ("Perez") were members of the Master Street Crew ("MS Crew") gang. This gang had a long-running feud with members of the Lansdowne Avenue gang ("LA Gang"), with regular shootouts between the two rival gangs.
>
> On October 23, 2017, Cornell Drummond ("Drummond"), a member of the LA gang, was talking to friend on the street

---

[*] Retired Senior Judge assigned to the Superior Court.

when he saw two men suspiciously ducking behind cars as they approached him. Drummond quickly went to a nearby alley where he normally kept a handgun stashed, but upon his arrival he remembered that he had recently loaned the gun to a fellow gang member, "Little Dave." Drummond went to Little Dave's house near the intersection of 60th and Media Streets to retrieve the gun. As he approached the intersection, [Mumin] and Perez jumped out from behind a parked vehicle. Drummond recognized both of them as members of the MS Crew. [Mumin] and Perez began shooting at Drummond, striking him in the back. Drummond had fallen to the ground, unable to walk, when Perez walked over to him and tried to shoot him three more times at close range but the gun jammed.

Police arrived on the scene shortly thereafter; Drummond did not identify his shooters and told police that the men were wearing ski masks and that "they finally got me." When interviewed by detectives at the hospital[,] Drummond only said, "They got me," and indicated that the shooters were from the MS crew. Beyond that, Drummond refused to cooperate with police. The next day, an anonymous caller provided police with information about the shooting. Based upon this phone call, as well as additional investigation, police created a photo array which included photos of [Mumin] and Perez. Drummond was shown these photo arrays and he declined to identify anyone.

Drummond remained hospitalized for over a month and then entered a rehabilitation center. As a result of the shooting, he was paralyzed permanently from the waist down and is now confined to a wheelchair.

PCRA Court Opinion, 4/21/20, at 2-3 (paragraph breaks added).

Thereafter, Drummond was arrested by federal agents and was charged with various drug trafficking and weapons charges. Although he was originally granted bail on these charges, bail was later revoked and Drummond was held in federal prison.

In March 2009, while awaiting trial on his federal charges, Drummond participated in a "proffer session." In exchange for consideration of a reduced sentence on his federal charges, Drummond agreed to provide information regarding criminal activity in the area of 60th and Lansdowne Streets, which had been the ongoing subject of an extensive investigation by federal agents. Toward the end of this session, Drummond volunteered that he knew who shot him and identified Mumin and Perez. The federal authorities conveyed this information to the Philadelphia Police Department, which ultimately led to the arrest of both men.

A joint trial began on February 16, 2011. On February 22, 2011, the jury found both men guilty of attempted murder and related charges. On July 25, 2011, the trial court sentenced Mumin to an aggregate term of 15 to 30 years of imprisonment.[1] Initially, Mumin did not filed a direct appeal. His appellate rights were reinstated *nunc pro tunc*, however, via a PCRA petition. In an unpublished memorandum filed on November 21, 2016, this Court affirmed Mumin's judgment of sentence. *Commonwealth v. Mumin*, 159 A.3d 594 (Pa. Super. 2016). On May 16, 2017, our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Mumin*, 169 A.3d 526 (Pa. 2017).

---

[1] The trial court sentenced Perez to an aggregate term of 17½ to 35 years of imprisonment. Perez also appealed the order denying him post-conviction relief at No. 3131 EDA 2019, which we also decide today.

On July 23, 2018, counsel filed a PCRA petition on Mumin's behalf and a supplemental petition on February 9, 2019. In these petitions, Mumin claimed to have "after-discovered" evidence based upon an affidavit from Drummond, in which he allegedly recanted his trial testimony, and evidence that detectives involved in the investigation of his case were guilty of misconduct. According to Mumin, this new evidence established the following:

1. Drummond admitted that he fabricated false evidence against [Mumin] and had a pattern and practice of fabricating false evidence and giving perjured testimony in multiple state and federal criminal cases including this one.

2. [Detective James] Pitts and [Detective Omar] Jenkins and state and federal [a]gents and prosecutors knowingly and intentionally facilitated the fabrication of evidence and subornation of perjury in [Mumin's] case and multiple others that Drummond testified in.

PCRA Petition, 7/23/18, at 12-13.

On April 9, 2019, the Commonwealth filed a motion to dismiss Mumin's petition. On August 26, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. Mumin did not file a response. By order entered September 24, 2019, the PCRA court denied Mumin's PCRA petition. This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Mumin now raises the following issue on appeal:

Did the PCRA court err in failing to find merit to [Mumin's] claim of [after] discovered evidence?

Mumin's Brief at 3.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his only issue on appeal, Mumin contends that the PCRA court erred in finding no merit to his claim that he was eligible for relief based on "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). To address this claim, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

[W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. **See**, **e.g.**, **Small**, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." **Commonwealth v. Padillas**, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Id.**

As noted above, Mumin claims he is entitled to relief based upon two interrelated sources of after discovered evidence—Drummond's alleged

recantation of his trial testimony and evidence of police misconduct.  We first consider Mumin's claim regarding Drummond.

As part of the litigation in an unrelated case involving Donte Hill, a/k/a "Tae," Drummond prepared a seven-page, handwritten affidavit on June 6, 2018.  We reproduce this affidavit verbatim:

> I sent a text to Tae sister on April 25th after a mutual friend Shawnell gave me Tae sister phone number.  I sent Tae sister a text that I wanted to right my wrong because I had lied on her brother.  I am living a different life now.  I want to help people that I did the wrong things to.  I lied because I wanted to get my time knocked down.  I thought Tae shot my grandma house up because my cousin killed Tae friend.

> Detective Pitts filled me in on what details I should talk about, like what kind of gun, the time of day, and the color car Tae was supposed to be driving.  I knew from the streets that Keem from Alden Street had money on Raheem head so I decided to lie and say Tae shot Raheem because I was angry and trying to come home.

> AUSA Fisk and the Ada told me that they would relocate me and keep me off the internet but that was a lie.  The only truth they told me was that I would get time off.  I got 7 years off my sentence.  **I got time off for testifying on** Donte Hill, Qudir Taylor, Tyrek Perez and **Kalif Mumin**.

> One of the other reasons why I lied on Tae is because I never liked nobody from 56th Street.  I also know that it wasn't Tae that shot my grandmom house up, it was Kenny James.

> I never received any money from the federal authorities.  No cash, no housing, no drugs, no nothing.  The times I said that to people, I was trying to make them mad and make it seem like I did it for a good reason.  Tae and I was never cool.  We never had a conversation, he would never confess a murder to me.

AUSA Robert Crawford told me whatever I know about just speak on it. He said "If you start it, we will finish it."

Homicide detective Pitts, said he already had Tae charged, we just need more evidence, like wirds from him. Detective Pitts told me to say that Tae told me that he emptied the whole clip.

Female ADA that prosecuted Tae case (I don't remember her name) asked me was I related to Anthony Moss. I said yes. She said if Moss killed Muhamad then how are you and Tae still cool? I said we not, that is why I'm trying to fry him. I heard that Tae shot my grandmom house up. She said I am here to help you do that.

In the case of Commonwealth v. Tyrik Perez, my testimony about us lying and blaming other people for murder is true. We did whatever needed to be done to be free again.

Qudir Taylor v. Commonwealth I testified that I was there and saw the murder but I lied and I was not really there, that was just part of the deal to get 7 years knocked off my sentence.

I was a witness on a kidnapping federal case and ATF Agent Gary Malone told me everything to say to the Grand jury. I had no idea what was going on in that case. I lied because they promised to let me out of custody the next day. I was released the next day. ATF Gary Malone was the agent that picked up off the street for my federal case for guns and drugs. I was caught with 2 guns, crack, and weed.

If I am asked, I am willing to testify at any court proceeding or the PCRA proceeding for Donte Hill so we can make this right. I feel bad for what I did. I feel better now that I know I did the right thing.

PCRA Petition, 7/23/18, Attachment (paragraph breaks and emphasis added).

Mumin claims that this affidavit demonstrates Drummond's recantation of his testimony from Mumin's trial.

The PCRA court explained that Mumin did not sustain his burden of proof for a number of reasons. The court first explained:

> First, [Mumin] is unable to show that Drummond's recantation would not be used solely for impeachment or would have compelled a different verdict at trial. In his affidavit, Drummond only briefly mentions [Mumin]. . . . At [Mumin's] trial, Drummond identified [Mumin] and Perez as the two men who shot him. Thus, Drummond's statements in his affidavit would only serve to challenge his credibility. Moreover, there is nothing to suggest that Drummond's affidavit would have compelled a different result at trial. It is well settled that recantation testimony is "extremely unreliable," and that "[w]hen the recantation involves an admission of perjury, it is the least reliable form of proof. **Commonwealth v. Johnson**, 841 A.2d 136 (Pa. Super. 2003) (quoting **Commonwealth v. Henry**, 550 Pa. 346, 706 A.2d 313, 321 (1997). At trial, the jury heard Drummond testify in person, saw him undergo thorough cross-examination by defense counsel, and listened to the other witnesses who corroborated portions of Drummond's testimony. It is not likely that Drummond's recantation in a separate case years later, where he only mentions [Mumin's] case in passing, would compel the jurors to reach a different verdict.

PCRA Court Opinion, 4/21/20, at 6.

Our review of the record supports the PCRA court's conclusion that Mumin has not established one or more of the factors regarding the after discovered evidence test. **Small**, **supra**.

Mumin's claims to the contrary are unavailing. Initially, we believe he mischaracterizes Drummond's affidavit as it relates to his case. Referring to the affidavit, Mumin asserts that "while primarily discussing his perjury in

relation to Donte Hill's case, Drummond critically also admits to lying in [his] case." Mumin's Brief at 14. We disagree.

A plain reading of the document readily establishes that Drummond did not admit in the affidavit that he "fabricated false evidence" against Mumin. **See** PCRA Petition, **supra**. The only mention of Mumin in the affidavit is the fact that Drummond "got time off" his sentence in return for testifying for the Commonwealth in several cases, including Mumin's. Our review of the trial transcript demonstrates that Drummond testified he would receive a reduced sentence if he testified truthfully. **See** N.T., 2/16/11, at 59, 110-11. As he did receive a reduced sentence, we cannot interpret Drummond's affidavit as an admission that he lied in Mumin's case. The only clear admission of lying was made in the unrelated case.[2] Mumin's claim that Drummond engaged in a "pattern and practice" of fabricating evidence is not sufficient to establish that he actually perjured himself when testifying in Mumin's case.

---

[2] Reviewing the affidavit as a whole, it is clear that any claim of "false fabrication" applied to Drummond's testimony against "Tae," a/k/a Donte Hill. The only other cases Drummond admitted to lying in his testimony was against Quadir Taylor, as well as in a federal kidnapping case. Although the affidavit refers to Mumin's co-defendant, Perez, Drummond's assertion that his "lying and blaming other people for murder is true" does not appear in our review of Drummond's testimony at the joint trial transcript in this case. **See** N.T., 2/16/11, at 24-142, N.T., 2/17/11, at 58-68.

In addition, Drummond's affidavit does not indicate he would be willing to testify at Mumin's PCRA proceeding.[3] **See Small**, 189 A.3d at 972 (explaining that after discovered evidence must be producible). While Mumin asserts that he exercised due diligence, he does not develop his claim that the alleged recantation by Drummond, by itself, would have been used for a purpose other than impeachment and that the recantation testimony would have resulted in a different verdict at trial.

Rather, Mumin asserts that he "believes and avers that the false testimony Drummond gave in the instant case inculpating [Mumin] was the result of a recently identified unconstitutional interrogation pattern and practice within the [Philadelphia's] Homicide [Division]." Mumin's Brief at 16.

This claim affords Mumin no relief, and leads to our consideration of Mumin's second argument of after-discovered evidence of police misconduct. In support of this claim, Mumin cites to **Commonwealth v. Thorpe**, CP-51-CR-0011433-2008 (C.P. Phila., Nov. 3, 2017), in which a different judge sitting on the Philadelphia County Court of Common Pleas, in an unrelated case, found that Detective Pitts and Detective Jenkins "utilized an unconstitutional 'pattern and practice' of, among other things, fabricating statements from suspects and witnesses in order to falsely inculpate a pre-ordained suspect." Mumin's Brief at 16-17. Mumin further contends that "[a]t

---

[3] Thus, Mumin's claim that the PCRA court inappropriately assessed Drummond's credibility without first holding a hearing fails. **See** Mumin's Brief at 23-24.

- 11 -

all times material," Detective Pitts and Detective Jenkins "were partners," and that the two detectives "jointly participat[ed]" in many of the cases cited in *Thorpe*. *Id.* at 17.

From his discussion of *Thorpe*, Mumin extrapolates that:

> Drummond's after discovered admission that Dets. Pitts and Jenkins fabricated the evidence he testified to would not have been used at trial merely to impeach Drummond's testimony. Drummond's testimony would have been independent, substantive evidence of police misconduct in this case. The unconstitutional conduct of detectives in Philadelphia's Homicide Division would undermine critical testimony of the detectives who took the witnesses['] statements in this case. It would not be used merely as impeachment evidence at a new trial.

Mumin's Brief at 18. Finally, as further proof, Mumin relies on an affidavit from "Little Dave" Kennedy in which he asserted, consistent with Drummond's initial statement to police, that the shooting suspects were wearing ski-masks. *Id.* at 19.

The PCRA court found no merit to Mumin's claim that police misconduct occurred in *his* case. The court explained:

> [Mumin's] claims regarding police misconduct are wholly without merit as he provided no evidence of misconduct in his own case. His allegations against Detective Pitts, based upon the claims in Drummond's affidavit as well as his interpretation of *Commonwealth v. Thorpe*, *supra*, are irrelevant to his own case as Detective Pitts was not even a witness at [Mumin's] trial. Moreover, [Mumin] does not provide any evidence of any police misconduct in his own case beyond a statement from David Kennedy, who testified at Perez'[s] PCRA evidentiary hearing. However, at that hearing, [the PCRA court, who also presided over the joint trial of Mumin and Perez] denied Perez'[s] claims for relief,

finding that Kennedy had "serious credibility issues," and emphasized that Kennedy did not even witness the shooting. As [Mumin] has nothing to support his argument beyond speculation, conjecture, and a statement from an individual already found to be not credible, his claims of police misconduct cannot form the basis of relief based upon after-discovered evidence.

PCRA Court Opinion, 4/21/20, at 6-7. Our review of the record supports this conclusion.

Once again, Mumin mischaracterizes the information provided by Drummond in his affidavit. In short, Drummond's affidavit does not include a statement that police misconduct occurred in Mumin's case. It is now well-settled that evidence of police misconduct in an unrelated case would only be used to impeach. *See Commonwealth v. Brown*, 134 A.3d 1097, 1109 (Pa. Super. 2016) (affirming denial of new trial when witnesses' testimony about Detective Pitts misconduct in other cases "would solely be used to impeach Detective Pitts' credibility"). *See also Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012) (holding that criminal charges against a detective in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach the detective's testimony).[4]

_____

[4] Mumin cites *Commonwealth v. Williams*, 215 A.3d 1019 (Pa. Super. 2019) for the proposition that evidence of police misconduct in other cases would not be used merely to impeach the officers' credibility, but rather, could have been used to bolster a petitioner's innocence. *See* Mumin's Brief at 12-13. *Williams* is distinguishable. That case involved a situation in which the Commonwealth conceded that a new trial was warranted because the police officer, who was the sole witness testifying at Williams' trial, was later accused of "serious allegations of misconduct." *Williams*, at 1022. Because the

Further, we agree with the PCRA court that Mumin's claim amounts to no more than speculation. In his case, there is no evidence that Detective Pitts was involved in the investigation in any respect. When Detective Jenkins interviewed Drummond at the hospital, Drummond was uncooperative and told the detective that his assailants were wearing ski masks. *See infra*. Although Detective Jenkins later developed photo arrays and showed them to Drummond, Drummond did not identify either man at that time. This was the limit of Detective Jenkins involvement in this case. *See* N.T., 2/17/11, at 214-16. Mumin speculates that because Detectives Pitts and Jenkins were partners, who often worked in tandem, police misconduct must have occurred in his case—"Detective Jenkins decided [after receiving the anonymous phone call] that [Mumin] and [Perez] were the two suspects." Mumin's Brief at 20.

Mumin's speculation and theories to support his claim that police misconduct occurred[5] cannot substitute for actual evidence of police improprieties in his case. This is especially true where Drummond was not only a Commonwealth witness at trial, but also was the victim of the crime which left him permanently paralyzed.

_____

Commonwealth would "never again" call the former police officer (who was neither Detective Pitts nor Detective Jenkins), the after discovered evidence "would not, indeed could not, be used as impeachment evidence at a new trial." *Id.* at 1027.

[5] Mumin also notes that the Commonwealth acknowledged that the ballistic evidence from the shooting was "lost." *See* N.T., 2/17/11, at 201-02.

In sum, because the PCRA court did not err in concluding that Mumin failed to establish his claim of after-discovered evidence. We therefore affirm the PCRA court's denial of post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/21